Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| KENNETH J. BALKARÁN RODRÍGUEZ<br><br>Recurrente<br><br>V.<br><br>LT AUTOS, LLC. HNC TOYOTA MONUMENTAL PONCE; MACCOOP COOP DE A/C PADRE MAC DONALD<br><br>Recurridos | TA2026RA00258 | *Revisión de Decisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.: PON-2025-0006368<br><br>Sobre: Compra Venta de Vehículos de Motor |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 26 de junio de 2026.

El 18 de mayo de 2026, compareció ante este Tribunal de Apelaciones, la parte recurrente, Kenneth J. Balkarán Rodríguez (en adelante, señor Balkarán Rodríguez o parte recurrente), por medio de *Solicitud de Revisión Judicial.* Mediante esta, nos solicita que revisemos la *Resolución* emitida el 11 de marzo de 2026, notificada al día siguiente, por la licenciada Katherine Solís Pérez, Jueza Administrativa del Departamento de Asuntos del Consumidor (en adelante, DACo). En virtud del aludido dictamen, la referida agencia le impuso un quince por ciento (15%) de responsabilidad a la Cooperativa de Ahorro y Crédito Padre Mac Donald (en adelante, MacCoop o cooperativa), y desestimó la causa en contra de LT Autos, LLC, h/n/c Toyota Monumental Ponce (en adelante, LT Autos o concesionario).

Por los fundamentos que expondremos a continuación, se confirma la *Resolución* recurrida.

**I**

El 6 de octubre de 2025 el señor Balkarán Rodríguez presentó una querella ante DACo, en contra de LT Autos, y MacCoop.[1] Mediante esta, la parte recurrente expuso que el 20 de julio de 2025 sufrió un accidente automovilístico mientras conducía su Toyota Camry, modelo XSE del año 2023. Indicó que, tras el incidente, presentó la reclamación correspondiente ante Universal Insurance Company (en adelante, Universal o aseguradora). Sin embargo, señaló que el 31 de julio de 2025 recibió un correo electrónico de dicha aseguradora informándole que la póliza había sido cancelada el mismo día de la compraventa del vehículo por falta de pago. Ante ello, el señor Balkarán Rodríguez acudió a MacCoop con el fin de atender la situación. A pesar de que la cooperativa le requirió la documentación relacionada con la cancelación de la póliza, afirmó no haber obtenido respuesta alguna. En vista de estos acontecimientos, la parte recurrente solicitó la cancelación del préstamo asociado al vehículo objeto de controversia.

Posteriormente, el 7 de noviembre de 2025, MacCoop presentó su *Contestación a Querella.*[2] En esencia, a pesar de que la cooperativa reconoció haber recibido el 19 de mayo de 2023 una comunicación de Universal solicitando la emisión de un cheque por la suma de cinco mil novecientos noventa y cinco dólares ($5,995.00), sostuvo que la única notificación relacionada con la cancelación de la póliza fue la remitida el 31 de julio de 2025, la misma que recibió el señor Balkarán Rodríguez. No obstante, insistió en que, desde el inicio, la parte recurrente manifestó haber adquirido por su cuenta una póliza de doble interés con Universal, por la cual pagaría una prima ascendente a la referida cantidad. En consecuencia, MacCoop afirmó haber actuado bajo la creencia

---

[1] Apéndice del recurso, Anejo XII.
[2] *Íd.*, Anejo XIII.

razonable de que el asegurado cumplió con el pago correspondiente y, por ello, no financió la póliza, dado que el propio recurrente se comprometió a prepagarla. Asimismo, la cooperativa expuso que el financiamiento otorgado al señor Balkarán Rodríguez ascendió a cuarenta y cuatro mil novecientos noventa y cinco dólares ($44,995.00), toda vez, que del *Contrato de Venta al Por Menor* suscrito el 6 de mayo de 2023 surgía que la parte recurrente entregó un pronto de seis mil dólares ($6,000.00) sobre un precio total de cincuenta mil novecientos noventa y cinco dólares ($50,995.00). Por lo cual, planteó que el costo de la póliza no formó parte del precio de venta del vehículo.

En igual fecha, LT Autos presentó su *Contestación a la Querella*.[3] En síntesis, el concesionario alegó que no intervino en la selección de la aseguradora escogida por la parte recurrente ni en la contratación de la póliza correspondiente al vehículo adquirido. Planteó, además, que ni en la transacción de compraventa, ni en el financiamiento otorgado, se efectuó cargo alguno por concepto de prima de seguro, lo cual, a su juicio, se reflejó expresamente en el *Contrato de Venta al Por Menor*. Del mismo modo, adujo que de dicho contrato también se desprendió que el señor Balkarán Rodríguez optó por gestionar de manera independiente la póliza en cuestión.

Luego de varios incidentes impertinentes pormenorizar, el 17 de diciembre de 2025, se celebró una vista administrativa ante DACo. Sometido el caso ante su consideración, el 11 de marzo de 2026, DACo emitió la *Resolución* recurrida.[4]

De las determinaciones de hechos emitidas por la agencia se desprende que, el 3 de mayo de 2023, el señor Balkarán Rodríguez adquirió en LT Autos el vehículo objeto de la controversia por un precio final de cincuenta mil novecientos noventa y cinco dólares

---

[3] *Íd.*, Anejo XIV.
[4] *Íd.*, Anejo I.

($50,995.00), mientras que la póliza de seguro ascendía a cinco mil novecientos noventa y cinco dólares ($5,995.00). El financiamiento fue aprobado por MacCoop el 23 de mayo de 2023 por la suma de cuarenta y cuatro mil novecientos noventa y cinco dólares ($44,995.00). Consta, además, que el propio recurrente reconoció que el costo del seguro era independiente del precio del vehículo y que su intención siempre fue pagarlo directamente al concesionario para evitar incluirlo en el financiamiento.

DACó señaló que el señor Balkarán Rodríguez declaró haber entregado seis mil doscientos cuarenta y cuatro dólares ($6,244.00) al concesionario. Sin embargo, la prueba demostró que dicha cantidad se aplicó al pronto y a la tablilla. DACo también consignó que la parte recurrente rechazó los seguros ofrecidos por MacCoop, indicando que gestionaría el suyo por cuenta propia. Añadió que la parte recurrente expresó que, de haber sabido que la póliza no se había satisfecho, hubiese realizado el pago correspondiente.

Asimismo, la evidencia reflejó que MacCoop recibió una comunicación de Universal el 19 de mayo de 2023, en la que se le indicó lo siguiente:

> Estimados señores: La póliza de referencia cubre el seguro doble interés solicitado por nuestro asegurado. Favor de expedir el cheque a nuestro favor pro a cantidad e $5,995, la cual corresponde al Doble Interés.
>
> Cualquier prima no devengada que surja por concepto de cancelación o endoso, si la hubiese, será remitida directamente a ustedes.[5]

También surgió que, como consecuencia del accidente, el vehículo en cuestión fue declarado pérdida total y que el balance pendiente del préstamo ascendía a treinta y un mil quinientos quince dólares con cuarenta y siete centavos ($31,515.47).

Evaluada la prueba, DACo concluyó que MacCoop presentó documentos firmados por la parte recurrente en los que este

---

[5] *Véase*, Apéndice del recurso, Anejo I, pág. 4, y Anejo IX.

manifestó que seleccionaría su propia póliza y la prepagaría por el término del contrato. Asimismo, determinó que no existía evidencia de que el concesionario hubiese recibido pago alguno por la póliza, pues los seis mil dólares ($6,000.00) entregados por el comprador correspondían al pronto y la tablilla. También se acreditó que MacCoop recibió dos (2) cartas de Universal, una del 19 de mayo de 2023 y el 18 de agosto de 2023, solicitando el pago de la prima, sin que informara al recurrente.

En cuanto a la responsabilidad, DACo concluyó que MacCoop, al conocer la falta de pago, tenía el deber de indagar e informar al comprador, por lo que le adjudicó un quince por ciento (15%) del balance pendiente y ordenó a pagar cuatro mil setecientos veinte siete dólares con treinta y dos centavos ($4,727.32). A su vez, entendió que la parte recurrente debió ser diligente en el seguimiento de la póliza y que no resultaba creíble que desconociera de la ausencia de pago, dado que los documentos evidenciaban que su desembolso se aplicó exclusivamente al pronto y la tablilla. Por ello, lo responsabilizó por el remanente de veintiséis mil setecientos ochenta y ocho dólares con quince centavos ($26,788.15). Finalmente, DACo desestimó la reclamación contra LT Autos al concluir que su participación se limitó fungir como intermediaria en la compraventa.

Inconforme, 18 de mayo de 2026, la parte recurrente presentó el recurso de *Revisión Judicial* ante nos. En el mismo, señala la comisión de los siguientes errores:

**ERROR PRIMERO:**
ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR "DACO" AL NO IMPONER RESPONSABILIDAD ALGUNA AL CONCESIONARIO LT AUTOS LLC h/n/c TOYOTA MONUMENTAL PONCE AUN CUANDO EN LAS DETERMINACIONES DE HECHOS SE DEMOSTRÓ QUE EL CONCESIONARIO FUE EL QUE REALIZÓ LAS GESTIONES A NOMBRE DEL QUERELLANTE EN UNIVERSAL INSURANCE.

**ERROR SEGUNDO:**
ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR "DACO" AL IMPONER UNA RESPONSABILIDA LIMITADA CORRESPONDIENTE AL QUINCE PORCIENTO (15%) A LA COOPERATIVA DE AHORRO Y CRÉDITO PADRE MACDONALD A PESAR DE QUE DE LA EVIDENCIA PRESENTADA SE DEMUESTRA QUE ESTA ACTUÓ DE FORMA NEGLIGENTE AL CONOCER QUE LA PÓLIZA DEL VEHÍCULO NO HABIA SIDO PAGADA Y NO TOMÓ ACCIÓN NI NOTIFICÓ AL QUERELLANTE DE TAL SITUACIÓN.

**ERROR TERCERO:**
ERRÓ EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR "DACO" AL DETERMINAR EN LA ORDEN QUE LA COOPERATIVA DE AHORRO Y CRÉDITO PADRE MACDONALD RESPONDE POR EL VEINTICINCO POR CIENTO (25%) DEL BALANCE DE $31,515.47 (BALANCE AL 16 DE DICIEMBRE DE 2025). SIN EMBARGO, ORDENA A LA COOPERATIVA A ACREDITAR UN PARA DE $4,727.32 CORRESPONDIENTE AL UNICAMENTE AL QUINCE PORCIENTO (15%) DEL BALANCE A DICHA FECHA.

Por su parte, el 17 de junio de 2026, LT Autos presentó *Alegato en Oposición a Recurso de Revisión Administrativa.* Sin embargo, vencido el término pertinente, no surge del expediente ante nos que MacCoop haya comparecido ante esta Curia.

Siendo así, perfeccionado el recurso, así como contando con copia certificada del expediente administrativo correspondiente, procedemos a expresarnos.

**II**

**A. *Estándar de Revisión Judicial de Determinaciones Administrativas***

De ordinario los tribunales apelativos debemos otorgar deferencia y respeto a las conclusiones e interpretaciones hechas por las agencias administrativas.[6] *Katiria's Café v. Mun. de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Vázquez et al. v. DACo,* 2025 TSPR 56, 216 DPR ___ (2025); *OEG v. Martínez Giraud,* 210 DPR 79 (2022); *Pérez López v. Depto. Corrección,* 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021);

---

[6] *Rolón Martínez v. Supte. Policía,* 201 DPR 26,35 (2018); *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016).

*Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019). No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. De igual manera, la más Alta Curia ha expresado que, la consideración otorgada por los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares*, supra.

En *Torres Rivera v. Policía de Puerto Rico*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.[7]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Katiria's Café v. Mun. de San Juan*, supra; *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 820.[8] Bajo este criterio, se debe dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 819-820.[9]

---

[7] Véase, *Super Asphalt v. AFI y otros*, supra, págs. 819-820.
[8] *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626.
[9] *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Katiria's Café v. Mun. de San Juan*, supra; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

Las determinaciones de hechos contenidas en las decisiones de las agencias, *podrán* ser sostenidas por el tribunal cuando estén basadas en evidencia sustancial que obra en el expediente administrativo. Mientras que, conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675; *Vázquez et al. v. DACo, supra*; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820.

Los foros revisores podrán apoyarse en las interpretaciones de las agencias. Sin embargo, dichas interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" y no avalar irreflexivamente, como se hacía en el pasado. *Vázquez et al. v. DACo, supra.* En casos administrativos el tribunal deberá realizar su tarea con un "*body of experience and informed judgment*" de la agencia, entre otra información a su disposición. *Íd.* De igual manera, los tribunales deberán ejercer un juicio independiente al

decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Íd.*

## B. Teoría General de Contratos

Según es sabido, las obligaciones nacen de la ley, los contratos, los cuasicontratos, los actos ilícitos, de los actos u omisiones en las que interviene culpa o negligencia, y de cualquier otro acto idóneo para producirlas, conforme el ordenamiento jurídico. Artículo 1063 del Código Civil de Puerto Rico, 31 LPRA sec. 8984; *Universal Ins. v. Popular Auto,* 207 DPR 228, 238 (2021); *NHIC et al. v. García Passalacqua et al.,* 206 DPR 105 (2021). Nuestro Código Civil define el contrato como aquel "negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma provista por ley, para crear, regular modificar o extinguir obligaciones". Artículo 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 9751; *Amador v. Conc. Igl. Univ. de Jesucristo,* 150 DPR 571, 581 (2000). El contrato se perfecciona desde que las partes manifiestan su consentimiento sobre el objeto y la causa, es decir, cuando median el objeto, consentimiento y causa. Artículo 1237 del Código Civil de Puerto Rico, 31 LPRA sec. 9771; *Pérez Rodríguez v. López Rodríguez et at.,* 210 DPR 163, 186 (2022). No obstante, lo anterior no aplica en los casos en que sea requerido el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Artículo 1237 del Código Civil de Puerto Rico, 31 LPRA sec. 9771. En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, que faculta a las partes a contratar o no hacerlo con determinada persona, así como pactar los términos y condiciones que tengan por conveniente. Artículo 1232 del Código Civil de Puerto Rico, 31 LPRA sec. 9753; *Pérez Rodríguez v. López Rodríguez et at.,* supra, pág. 187; *Burgos López et al. v. Condado Plaza,* 193 DPR 1, 7-8 (2015); *Arthur Young & Co. v. Vega III,* 136 DPR 157 (1994). Sin embargo, tal libertad no es infinita, puesto que, las partes podrán

acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. Artículo 1232 del Código Civil de Puerto Rico, 31 LPRA sec. 9753; *Burgos López et al. v. Condado Plaza,* supra, págs. 7-8; *Oriental Bank v. Perapi,* 192 DPR 7, 15 (2014). Una vez se perfecciona el contrato, lo acordado en este tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Artículo 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 9754. Finalmente, los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR,* 143 DPR 610, 627 (1997).

### III

En el presente caso, la parte recurrente sostiene que DACo incidió al desestimar la reclamación presentada contra LT Auto, pues, a su juicio, la prueba demostró que dicho concesionario realizó gestiones ante Universal en representación del señor Balkarán Rodríguez. Asimismo, arguye que la agencia erró al limitar la responsabilidad de MacCoop a un quince por ciento (15%) del balance adeudado, pese a que esta tuvo conocimiento de que la póliza de seguro no se había pagado y, aun así, omitió informarle de tal circunstancia. Finalmente, cuestiona el cálculo de la cuantía adjudicada por DACo al señalar una aparente inconsistencia entre el porcentaje de responsabilidad impuesto a MacCoop y la suma que se le ordenó satisfacer.

Examinado el expediente administrativo en su totalidad, así como el derecho aplicable, concluimos que los señalamientos de error no ameritan nuestra intervención. Veamos.

La prueba presentada acreditó que el señor Balkarán Rodríguez adquirió el vehículo de autos por la suma de cincuenta mil novecientos noventa y cinco dólares ($50,995.00), así como que

este efectuó un desembolso de seis mil dólares ($6,000.00). Del *Contrato de Venta al Por Menor* surge claramente que dicha cantidad fue aplicada al pronto y a los gastos relacionados con la tablilla del vehículo.[10] De igual forma, la evidencia demostró que la parte recurrente manifestó reiteradamente su intención de obtener y prepagar por cuenta propia la póliza de seguro correspondiente, precisamente para evitar que dicho costo formara parte del financiamiento otorgado por MacCoop. Por consiguiente, el expediente que obra en autos no contiene evidencia que sostenga la contención de que los seis mil dólares ($6,000.00) entregados por la parte recurrente fueron destinados al pago de la prima del seguro.

Ahora bien, también surge del expediente que MacCoop recibió comunicaciones de Universal informándole que la prima de la póliza no había sido satisfecha y que la cubierta eventualmente fue cancelada. A pesar de ello, la cooperativa no le notificó dicha situación al señor Balkarán Rodríguez. Ante ese cuadro fáctico, DACo concluyó que MacCoop incumplió con el deber de actuar diligentemente una vez advino en conocimiento de la falta de pago de la póliza, razón por la cual le impuso una responsabilidad parcial. No obstante, la agencia también determinó que el propio recurrente contribuyó a la situación al asumir que la póliza había sido pagada sin realizar gestión alguna para corroborarlo, particularmente, cuando había optado por obtenerla y sufragarla de manera independiente. A la luz de tales determinaciones, no encontramos base para concluir que DACo actuó de forma arbitraria, irrazonable o contraria a derecho al adjudicar a MacCoop una responsabilidad limitada al quince por ciento (15%) del balance adeudado.

De igual forma, coincidimos con la determinación de DACo de desestimar la reclamación contra LT Auto. La prueba sustancial que

---

[10] *Véase*, Apéndice del recurso, Anejo XVI, pág. 1.

obra en el expediente sostiene la conclusión de que la participación del concesionario se limitó a la transacción de compraventa del vehículo y a servir de enlace en las gestiones relacionadas con la obtención de la póliza. Nada en el expediente demuestra que LT Auto hubiese recibido pago alguno destinado a satisfacer la prima del seguro o que hubiese intervenido en los hechos que culminaron con la cancelación de la cubierta y el desconocimiento de la parte recurrente sobre dicha situación.

A su vez, es menester destacar que varios de los planteamientos formulados por la parte recurrente descansan sobre cuestionamientos a la apreciación de la prueba y a las determinaciones de credibilidad efectuadas por DACo durante la vista administrativa. Sin embargo, la parte recurrente no puso a disposición de este Foro la regrabación ni la transcripción de los procedimientos. Ante tales circunstancias, carecemos de los elementos necesarios para revisar adecuadamente dichas determinaciones, las cuales gozan de una presunción de corrección y merecen la correspondiente deferencia judicial.

Por último, en cuanto al *tercer señalamiento de error*, surge de la propia *Resolución* recurrida que DACo adjudicó a MacCoop una responsabilidad equivalente al quince por ciento (15%) del balance pendiente. Si bien en una parte del dictamen se hace referencia a un veinticinco por ciento (25%), la cuantía finalmente impuesta, cuatro mil setecientos veintisiete dólares con treinta y dos centavos ($4,727.32), corresponde precisamente al quince por ciento (15%) del balance adeudado. Siendo así, y considerando la *Resolución* en su totalidad, es nuestra apreciación que la referencia al veinticinco por ciento (25%) constituye un mero error tipográfico que no afecta la esencia del dictamen ni genera incertidumbre sobre el remedio concedido por la agencia.

De este modo, resolvemos que DACo actuó dentro del marco de su discreción y que sus determinaciones encuentran apoyo en evidencia sustancial que obra en el expediente administrativo, por lo que procede confirmar la *Resolución* recurrida.

**IV**

Por los fundamentos antes esbozados, se confirma la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones